**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 19-20551-CR-MORENO**

**UNITED STATES OF AMERICA**

**v.**

**ERIC LIN,**
**a/k/a "Jake Howard,"**
**a/k/a "Eric A Schopenhauer,"**

**Defendant.**
______________________________/

**RESPONSE TO DEFENDANT'S OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT**

The United States, by and through the undersigned Assistant United States Attorney, hereby files this response opposing, in part, defendant Eric Lin's Objections to the Presentence Investigation Report ("PSI") [D.E. 24]. Specifically, the United States opposes the objection listed in paragraph 1 of defendant's pleading, relating to paragraph 27 of the PSI. The United States does not oppose the objections listed in paragraphs 2, 3, 4, and 5 of defendant's pleading, relating to paragraphs 39, 40, and 41 of the PSI.

**1. The Six Level Enhancement in ¶ 27 of the PSI Applies**

In his objections to the PSI, defendant argues that the six level enhancement pursuant to Section 2A6.1(b)(2) for "offenses involving any conduct evidencing an intent to carry out such threat," does not apply to him. The United States disagrees.

This case involves threatening communications to kill or otherwise harm all Hispanics, as well as the person to whom the communications were sent, victim C.I. For example, in one message to C.I., dated June 7, 2019, defendant wrote, "In 3 short years your entire Race your entire

culture will Perish only then after I kill your Spic family will I permit you to Die by Hanging on Metal Wire." *See* PSI at ¶ 11(a)(i). This threat was directed to all Hispanics, not just C.I. Likewise, on June 11, 2019, the defendant sent the following message to C.I., "I will stop at Nothing until you, your family, your friends,, your entire WORTHLESS LATIN RACE IS RACIALLY EXTERMINATED!" *See* PSI at ¶ 11(e). Again, this message shows defendant's offense conduct involved a desire to commit violence against, not just C.I., but other Hispanics generally. There is no shortage of messages from the defendant in which he espouses his hatred for Hispanics and his desire to kill or otherwise harm all Hispanics. *See e.g.* PSI at ¶¶ 11(a)(ii); 11(c); 11(i)(i); and 11(i)(ii).

In his objections, Defendant takes a very narrow view of his offense conduct as involving only threats to C.I. That is simply not the case and is belied by the uncontested portions of the PSI. Importantly, and contrary to defendant's view of the offense conduct in this case, Defendant's threats were not limited to harming C.I. Defendant's offense conduct involves harming Hispanics, generally.

Consistent with his desire to "exterminate" Hispanics, generally, and not just harm, C.I. the defendant recruited his friend, C.R. to "beat up" a Hispanic male who worked with C.I. *See* PSI at 12. In particular, defendant sent C.R. a message on July 10, 2019, via Facebook direct message ("DM") stating "go to Miami and beat up this Spic who insulted me." *Id.* Defendant went on to send C.R. a message containing the name of the restaurant were the intended male victim worked (the same restaurant at which C.I. worked), as well as a picture of the intended male victim. *Id.* at ¶ 14. C.R. asked for $3,000. *Id.* Defendant, then stated "It doesn't matter how much money it costs I want this guy beaten up or killed. He's a Spic so no one cares about him outside of Miami." *Id.* Defendant provided significant detail about the ways in which he

(defendant) wanted this victim to be harmed, stating to C.R. "…f---ing him up is good enough just break his spinal cord so he will have to live in a wheelchair and break his arms and legs and take out his eyes with your fingers like literally blind him." *Id.* The very next day defendant transferred $377.77 into C.R.'s bank account "as a gesture of goodwill." *Id.*

Consistent with the case law cited by defendant in his objections, *see United States v. Taylor*, 88 F.3d 938 (11th Cir. 1996), *United States v. Barbour*, 70 F.3d 580 (11th Cir. 1005), defendant's overt and unmistakable act of sending money to facilitate C.R.'s trip to Miami to maim or otherwise kill the Hispanic male, is clear evidence of an intent to carry out the numerous threats defendant made to harm Hispanics generally and falls within the range of conduct contemplated by *Taylor* and *Barbour*. Indeed, defendant does not contest that the $377.77 was sent by defendant to C.R. in exchange for C.R. traveling to Miami to harm a Hispanic male. *See* D.E. 24 at 1. Accordingly, the six level enhancement plainly applies.

Further, the United States maintains that defendant also evidenced an intent to carry out his threats toward C.I. After defendant paid C.R. the $377.77 to harm C.I.'s coworker, defendant's discussions turned to his plot to kidnap C.I. *See* PSI ¶ 15. Defendant went on to send numerous messages to C.R. detailing how C.R. should commit the kidnapping, including putting C.I. in chains and placing her in a "Plastic Rubber made [*sic*] Storage Bin" to transport her out of Miami. *See* PSI at ¶ 15. The messages from defendant to C.R. continued in this detailed fashion for several days and included statements by the defendant about C.R. recruiting C.R.'s wife to travel to Miami together to pose as a wealthy couple in order to trick C.I. into following them to a "rented house" or "mansion." *Id.* Additionally, in those messages defendant informed C.R. about the location of C.I.'s workplace. While there was no exchange of money between defendant and C.R. for the kidnapping in particular, and no surveillance was conducted on C.I., there was detailed discussion

about the way in which defendant wished to kidnap C.I., the precautionary measures C.R. had to take in order to avoid a lengthy prison sentence ("You don't to kill her, hurt her so at most you will be charged with kidnapping," *see* PSI at ¶ 15), and the price defendant was willing to pay to have C.I. kidnapped. *Id.* The United States maintains that this is more than what defendant characterizes as "fantastical messages," and is instead clear evidence of defendant's intent to kidnap and cause harm to C.I. In particular, defendant affirmatively contacted and recruited C.R. to commit the kidnapping, and engaged C.R. in detailed discussions over the course of several days about how to commit the kidnapping of C.I.

In *United States v. Scott*, 441 F.3d 1322 (11th Cir. 2006), the Eleventh Circuit rejected the district court's application of the six level enhancement where defendant sent threatening letters to a judge and made a statement to the FBI that "there are a lot of people that I want to do something to, but I have not made up my mind when or where I will do it." 441 F.3d at 1324. The Eleventh Circuit reasoned that "[Scott's statement to the FBI] was not conduct before or during the criminal offense but simply an answer (and a somewhat ambiguous one at that) given by Scott while in custody and in response to an investigator's question, and it occurred after the crime had been completed." *Id.* at 1329.

In the instant case, defendant recruited the services of C.R. in July 2019. *See* PSI at ¶ 13. Defendant was sending threatening communications to kill all Hispanics and to kill/harm C.I. between May 30, 2019 and August 14, 2019. *Id.* at ¶ 11. Accordingly, the recruitment of C.R. to cause harm to the Hispanic male who worked with C.I. and to kidnap C.I. occurred while defendant was committing the instant offense. Additionally, unlike the defendant in *Scott*, defendant in this case went beyond making "ambiguous" statements to C.R. Defendants conversations with C.R. about how to harm C.I.'s coworker and how to kidnap C.I. were very specific, detailed, and

premeditated. The conversations about harming the Hispanic male and kidnapping C.I. lasted over the course of days. Defendant supplied C.R. with information about where C.I. and the Hispanic male worked. Defendant even sent a photograph of the Hispanics male to C.R. Moreover, defendant punctuated his intent to follow through with his threats by sending a payment of $377.77 to C.R. to carry out the plan to harm the Hispanic male. Thus, defendant's conduct goes well beyond the "ambiguous" statements made after the crime was committed in *Scott* and bares greater resemblance to the overt acts taken in *Taylor* and *Barbour* where the Court affirmed the application of the six level enhancement. For those reasons, the United States submits that the six level enhancement under 2A6.1(b)(1) applies in the instant case.

**2. Criminal History Points: PSI at ¶ 39**

The United States does not oppose this objection and agrees with defendant that he should not receive any criminal history points for the conviction and 90-day sentence described in paragraph 39 of the PSI. In particular, the sentence for the harassment charged described in paragraph 39 of the PSI was imposed on October 8, 2008. The instant offense, when considering the relevant conduct associated with the threats defendant sent to victim M.S., commenced in April 2019. That is outside the ten-year period contemplated by § 4A1.1(b) of the guidelines. Accordingly, no criminal history points should apply in paragraph 39.

**3. Criminal History Points: PSI at ¶ 40**

The United States does not oppose this objection and agrees that defendant should receive only one (1) criminal history point for the conviction described in paragraph 40. According to the Maryland state court docket, on March 13, 2009, defendant's commitment to custody was "revised" and defendant was released on bond. Accordingly, under § 4A1.1(c) of the Sentencing Guidelines, defendant should receive one criminal history point for this conviction.

**4. Criminal History Points: PSI at ¶ 41**

The United States does not oppose this objection to the PSI and agrees that defendant should receive one (1) criminal history point for this conviction. According to the PSI at ¶ 41, defendant was originally sentenced to 20 years' imprisonment for a first degree burglary conviction. He was subsequently resentenced to credit time served with balance suspended and five years of probation. Accordingly, defendant should receive one criminal history point pursuant to § 4A1.1(c) of the Sentencing Guidelines.

**5. Date of Release: PSI at ¶¶ 38, 40, and 41**

The United States does not oppose this objection. According to paragraph 41 of the PSI, it states that on January 15, 2013, defendant was resentenced to twenty year's imprisonment, with credit time served, and with balance suspended. Accordingly, it appears that defendant would have been released on that date. Additional, the U.S. Probation Office has conferred with the Maryland state court and has verified that defendant's release date was in fact on January 15, 2013.

*[This space intentionally left blank.]*

## CONCLUSION

Based on the foregoing, the United States respectfully requests that this Honorable Court overrule defendant's objection to paragraph 27 of the PSI and sustain defendant's objections to paragraphs 39, 40, and 41 of the PSI.

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

By: *s/Maria K. Medetis*

Maria K. Medetis
Assistant United States Attorney
Court ID No. A5501214
99 N.E. 4th Street
Miami, Florida 33132-2111
Tel: (305) 961-9010
Fax: (305) 579-7976
maria.medetis@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on March 13, 2020, I electronically filed the foregoing with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

*s/ Maria K. Medetis*
Maria K. Medetis
Assistant United States Attorney